<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LESROY E. BROWNE,** *on behalf of himself and those similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> **CAVALRY PORTFOLIO SERVICES, LLC,** <br><br> Defendant. | Civil Action No. 15-6005 (JAD) <br><br> **OPINION** |

<u>**JOSEPH A. DICKSON, U.S.M.J.**</u>

      This matter comes before the Court upon Plaintiff Lesroy E. Browne's application for an award of fees and costs in connection with the parties' settlement in this matter. (ECF No. 60). The Court conducted oral argument on May 14, 2020. After carefully considering the parties' submissions and arguments, and for the reasons stated below, Plaintiff's application is **GRANTED IN PART**.

      **I.**      **RELEVANT FACTS AND PROCEDURAL HISTORY**

      Plaintiff originally commenced this litigation on August 4, 2015. (Compl. ECF No. 1). Plaintiff alleged that Defendant Cavalry Portfolio Services, LLC violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), by sending out debt collection letters "in envelopes that made visible from outside of the envelopes the barcodes/quick response codes containing account numbers associated with the debt." (Pl. Br. at 2, ECF No. 60-1; Compl. ¶¶ 16-30, ECF No. 1). On December 28, 2015, Plaintiff filed an Amended Complaint, expanding his pleading to assert the same alleged violation on behalf of a putative class of similarly situated New Jersey residents. (Am. Compl. ¶¶ 16-46, ECF No. 8).

This Court conducted an initial conference on February 22, 2016 and held several telephone conferences thereafter. On November 30, 2016, Plaintiff's counsel advised that the parties had reached a tentative, class-wide settlement, and that Plaintiff required certain "confirmatory discovery" from Defendant in order to finalize that settlement. (Pl.'s Nov. 30, 2016 Letter, ECF No. 14). The parties then spent the next several years working through their issues, with the Court's assistance, and consented to the undersigned's jurisdiction on May 30, 2018. (ECF No. 38). On July 26, 2019, Plaintiffs filed a motion seeking certification of the settlement class and preliminary approval of the parties' settlement. (ECF No. 56). The Court granted that application by Order dated September 12, 2019, and certified the following class:

> All consumers residing in the State of New Jersey, to whom Defendant sent a collection letter in the same or similar form as Exhibit A; which letter (a) was dated from August 4, 2014 through and including August 4, 2015, (b) was seeking to collect a consumer debt allegedly owed to Cavalry SPV I, LLC, which originated from Capital One Bank (USA), N.A., and (c) was sent in a windowed envelope such that the barcode /quick response code containing the "Cavalry Account Number " associated with the debt was visible from outside the envelope.

(Sept. 12, 2019 Order at 2, ECF No. 58). The Court also set deadlines for class notice and various submissions, and scheduled a final fairness hearing for January 7, 2020. (See generally id.). On December 25, 2019, Plaintiff filed a motion seeking final approval of the parties' settlement as well as an award of attorneys' fees. (ECF No. 60). By letter dated January 6, 2020, Defendant advised the Court that while it supported both the class settlement and the incentive award to be paid to Plaintiff, it opposed class counsel's fee request. (Def. Jan. 6, 2020 Letter at 1-2, ECF No. 62).

Following the January 7, 2020 final fairness hearing, the Court entered an Order granting final approval of the parties' class action settlement. (Jan. 7, 2020 Order, ECF No. 63). In that Order, the Court explicitly reserved its decision on Plaintiff's application for fees and costs, and included that

issue in its retention of jurisdiction. (Id. at 5-6). After entry of the Court's January 7, 2020 Order, the parties' dispute over counsel fees is the only issue remaining in this case.

On January 28, 2020, Defendant filed its opposition to Plaintiff's fee application. (ECF No. 64). Plaintiff filed a reply submission on March 5, 2020. (ECF No. 72). The Court conducted oral argument via Zoom video conference on May 14, 2020 and the parties thereafter filed various supplemental submissions. (ECF Nos. 78-80).

## II. **LEGAL DISCUSSION**

The FDCPA provides, in pertinent part, that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount [that includes] . . . in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). In their Class Action Settlement Agreement, the parties expressly agreed that "Plaintiff is the prevailing party as contemplated by 15 U.S.C. § 1692k(a)(3). Defendant agrees to pay reasonable attorney's fees and costs in an amount awarded by the Court pursuant to the Fair Debt Collection Practices Act." Plaintiff's counsel's entitlement to an award of fees is, therefore, not in question. The parties' dispute concerns whether the amount of counsel's proposed award is reasonable under the law.

As the United States Court of Appeals for the Third Circuit explained:

> There are two basic methods for calculating attorneys' fees - the percentage-of-recovery method and the lodestar method. "Each method has distinct advantages for certain kinds of actions, which will make one of the methods more appropriate as a primary basis for determining the fee." The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund "in a manner that rewards counsel for success and penalizes it for failure." The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially

> beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation.

Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions), 148 F.3d 283, 333 (3d Cir. 1998) (internal citations omitted). "In order to determine what constitutes a reasonable attorney's fee under the FDCPA, the Court must employ the well recognized 'lodestar' method applicable under other fee-shifting statutes which entails multiplying the total number of hours reasonably expended by a reasonable hourly rate." Bilazzo v. Portfolio Recovery Assocs., LLC, 876 F. Supp. 2d 452, 458 (D.N.J. 2012) (citing Graziano v. Harrison, 950 F.2d 107, 114 (3d Cir. 1991)); accord Stair ex rel. Smith v. Thomas & Cook, No. 06-cv-4454 (JBS), 2009 WL 1635346, at *2 (D.N.J. June 10, 2009) (Simandle, U.S.D.J.). "'When the applicant for a fee has carried his burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled.'" Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001) (quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986)).

"After calculating the lodestar, the court may deviate from it, but only in the 'rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" Souryavong v. Lackawanna Cty., 872 F.3d 122, 128 (3d Cir. 2017) (quoting Perdue v. Kenny A., 559 U.S. 542, 554, 130 S. Ct. 1662, 1673, 176 L.Ed.2d 494, 506 (2010)). "Thus, the consideration of [the factors that the United States Court of Appeals for the Fifth Circuit articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)[1]] is permissible on the back end of a lodestar's calculation,

---

[1] In Johnson, the Fifth Circuit directed courts to consider twelve factors when fashioning an appropriate fee award: (1) "The time and labor required" in litigating a matter; (2) "The novelty

as long as [those factors] are not already 'subsumed in the lodestar calculation.'"  Id. (quoting Purdue 559 U.S. at 553).

Here, Plaintiff's counsel has supported their application with both their billing records and a certification describing, among other things, each billing attorney's experience and involvement in the case, as well as the relevant, prevailing market rates.  (See Decl. of Yongmoon Kim ("Kim Decl.") ¶¶ 53-89, Ex. B, ECF No. 60-2).  In their original application, Plaintiff's counsel sought a total of $79,842.80 in fees and expenses for work performed from June 15, 2015 through December 24, 2019.  (Id.).  When filing their reply submission, Plaintiff's counsel sought another $61,176.00 in fees and costs for work performed between December 24, 2019 and March 5, 2020.  (Supplemental Decl. of Yongmoon Kim ("Suppl. Kim Decl.") ¶¶ 31-41, Ex. A, ECF No. 72-1).[2]  Plaintiff's counsel therefore seeks a total of $140,512.00 in fees and costs.  (Suppl. Kim Decl. ¶ 37, ECF No. 72-1).

Defendant opposes Plaintiff's motion, arguing that Plaintiff's attorneys seek an unreasonably large fee award.  (See generally, Def. Br., ECF No. 64).  While Defendant's submission attacks Plaintiff's fee application on multiple grounds, it focuses on two primary points:  (1) Plaintiff's counsel's hourly rates are unreasonably high; and (2) counsel spent an excessive amount of time working on this case.

---

and difficulty of the questions"; (3) "The skill requisite to perform the legal service properly"; (4) "The preclusion of other employment by the attorney due to acceptance of the case"; (5) "The customary fee"; (6) "Whether the fee is fixed or contingent"; (7) "Time limitations imposed by the client or the circumstance"; (8) "The amount involved and the results obtained"; (9) "The experience, reputation, and ability of the attorneys"; (10) "The 'undesirability' of the case"; (11) "The nature and length of the professional relationship with the client"; and (12) "Awards in similar cases".  488 F.2d at 717-19.

[2] Though both sets of billing records reflect work performed on December 24, 2019, those billing entries reflect different, non-duplicative work.

The Court will first address the reasonability of Plaintiff's counsel's hourly fees. As an initial point, this Court has previously considered, and approved, the same proposed rates for most of these attorneys when resolving a motion for settlement approval in Civil Action No. 17-13707, Latteri v. Mayer. (See Jan. 9, 2020 Declaration of Yongmoon Kim ¶ 71, ECF No. 56-2 in Civil Action No. 17-13707) (proposing hourly rates of $495.00 for Yongmoon Kim, $625.00 for Alan Poliner, $395.00 for Catherine Rhy, $295.00 for Eva Pitts, and $165.00 for paralegals); January 22, 2020 Order, ECF No. 58 in Civil Action No. 17-13707 (granting final approval of class action settlement and approving counsel's requested fee award). Having now reviewed their respective qualifications anew, the Court again finds that the proposed rates for attorneys Kim, Poliner, Rhy, Pitts are reasonable. The Court further finds that Plaintiff's proposed hourly rate for counsel's paralegals is also reasonable. The Court must, however, place one significant limitation on Attorney Kim's rate. As Defendant points out, (Def. Br. at 32-33, ECF No. 64), while Attorney Kim represented that his rate increased from $455.00 per hour to $495.00 per hour as of October 1, 2019, it appears that Plaintiff seeks to apply the $495.00 rate to all of his work on this case – including that performed before October 1, 2019. While the Court finds that both the $455.00 and $495.00 hourly rates are reasonable for someone of Mr. Kim's experience level, equity demands that the Court apply the $455.00 rate to all work Mr. Kim performed through and including September 30, 2019 and the $495.00 rate to the work he performed thereafter.

The Court next turns to Attorney Jason D'Agnenica's proposed rate of $705.00 per hour. While that rate is, perhaps, somewhat out-of-step with those of his colleagues in this case, that does not necessarily render it unreasonable. Indeed, one Judge in this District recently approved a fee award premised, in part, on Mr. D'Agnenica billing at the higher rate of $730.00 per hour.

(See July 2, 2020 Decl. of Yongmoon Kim ¶ 100, ECF No. 116-2 in Civil Action No. 16-1117) (setting forth the plaintiffs' attorneys' proposed hourly rates); see also July 9, 2020 Order, ECF No. 119 in Civil Action No. 16-1117 (granting the plaintiff's requested fee award without modification)).  Considering his role in this case, however –preparing draft documents for attorney Yongmoon Kim's review (including, in no small part, adapting work product developed in previous litigation)– the Court finds that Mr. D'Agnenica's hourly rate is unreasonably high.[3] The Court finds that an hourly rate of $550, while still higher than that of most of his co-counsel in this matter, would be reasonable under the circumstances.

The Court must next examine whether the hours counsel spent completing the various tasks in this case were reasonable.  Defendant's argument on this point is threefold.  First, Defendant contends that Plaintiff's counsel spent an unreasonably long time adapting existing work product for use in this case.  (Def. Br. at 12-25, ECF No. 64). Second, Defendant argues that the Court should withhold fees for certain "unsuccessful" litigation activities.  (Id. at 27-29). Third, Defendant suggests that the Court should award Plaintiff's counsel a reduced rate for time spent on travel.  (Id. at 33-34).  The Court addresses each point in turn.

Defendant accuses Plaintiff's counsel of misrepresenting the time it took to prepare Plaintiff's submissions for both preliminary approval and final approval of the parties' class settlement.  (Id. at 12-25).  Defendant argues, in sum, that Plaintiff's counsel recycled old briefs and other documents, and thus could not have truly spent the time described in their billing records on those tasks.  (Id.).  In making its argument, Defendant highlights the similarities between the legal arguments presented in Plaintiff's briefing in this case, and those in documents that Plaintiff's counsel filed in other FDCPA cases.  (Id.).  Defendant asks that the Court strike

---

[3] For instance, though it appears Mr. D'Agnenica prepared documents for Mr. Kim's review, his proposed hourly rate is more than $200 higher than Mr. Kim's.

7

Plaintiff's billing entries for those tasks in their entirety, and exclude them from any fee award. Defendant takes particular exception to the amount of time that attorneys Jason D'Agnenica and Catherin Rhy spent on their respective activities.

The Court has carefully reviewed the documents Plaintiff filed in this case in support of his applications for preliminary and final approval of the parties' class settlement, the sample documents Defendant represented that Plaintiff's counsel filed in other, similar cases, and Plaintiff's counsel's billing entries in this matter. The Court makes three initial, general observations before focusing on specific activities.

First, this Court does not agree with Defendant's suggestion that Plaintiff's counsel has deceived that Court regarding the number of hours they worked on these applications. To the extent certain of counsel's activities took longer than the Court might have anticipated, the Court finds that those situations reflect inefficiency, rather than dishonesty.

Second, contrary to Defendant's suggestion, Plaintiff's counsel's role in preparing the applications in question was not limited to filling out simple forms. Certain portions of the documents, such as those related to factual background and procedural history, are obviously new. Other portions, including (unsurprisingly), the legal argument sections of Plaintiff's briefing, are taken largely from previous submissions. That does not mean that counsel can simply copy and paste legal arguments from one brief to another, without careful consideration. Even when adapting existing work product, counsel must apply their legal skills to ensure: (1) that the legal points and citations included in the briefing remain accurate; and (2) that the legal conclusions included in the previous briefing continue to apply given the facts of the particular case. That, in turn, requires counsel to be fully conversant with those relevant facts. Indeed, if Plaintiff' counsel had failed to tailor their arguments in this fashion, the Court would have denied

their applications. Where, as here, the attorneys preparing the submissions did not personally draft the previous briefing, (Suppl. Kim Decl. ¶ 17, ECF No. 72-1), it is also reasonable to anticipate that it will take counsel some additional time to familiarize themselves with the voluminous materials and ensure their accuracy. Indeed, it is their obligation to do so. Such behavior should be encouraged, not ridiculed. The alternative would be for counsel to create wholly new work product each time; a wasteful endeavor that would take far longer when considering the nature of the materials in question.

Third, the Court notes that, while Defendant obviously knew that Plaintiff would seek an award of attorneys' fees (language acknowledging counsel's entitlement to a reasonable fee was embedded in the parties' settlement agreement), it appears that Defendant was content to let Plaintiff's counsel do all of the work on the applications for both preliminary and final approval. While this certainly would not entitle Plaintiff's counsel to recover more than a reasonable fee, it does cause the outraged tone of Defendant's briefing to ring somewhat hollow.

Turning to Plaintiff's application for preliminary approval of the parties' class wide settlement, Plaintiff's billing records reflect that Attorney Rhy initially took the laboring oar in drafting and updating the necessary submissions, that Attorney Kim reviewed her work, and that Mr. Kim and Jessica Yu, a paralegal at Mr. Kim's firm, (Decl. of Jessica Yu ¶ 1, ECF No. 72-2), thereafter worked to finalize and file those papers. (Kim Decl., Ex. B at "7 of 10" – "9 of 10", ECF No. 60-2). Nothing in that arrangement is unusual or duplicative and the Court finds that the time Plaintiff's counsel devoted to the preliminary approval application was reasonable.

Focusing next on Plaintiff's motion for final approval of the parties' settlement, the Court notes that same general, and wholly appropriate, arrangement. Attorney D'Agnenica undertook the bulk of the work in adapting existing work product and preparing other draft documents in

9

support of Plaintiff's application.  (Id. at "9 of 10" – "10 of 10").  Attorney Kim reviewed and edited Mr. D'Agnenica's work, and paralegal Jessica Yu assisted in finalizing the motion for submission to the Court.  (Id. at "10 of 10").  The Court recognizes that preparing an application for final approval is a significant undertaking, even when counsel can adapt existing work product.  That being said, given the nature of the work he performed on this assignment, along with the level of review and modification that his work required, the Court finds that Mr. D'Agnenica was, perhaps, not as efficient as he should have been.  The Court will, therefore, take the total hours Mr. D'Agnenica spent on the motion for final approval (29.1) and reduce them by 20% (5.82) for a revised total of 23.82 hours.  That reduction, coupled with Mr. D'Agnenica's modified hourly rate, yields a reasonable result.  The Court finds that the time Mr. Kim and Ms. Yu spent on the assignment was reasonable.

The Court next turns to Defendant's argument that the Court should exclude hours spent on "unsuccessful" litigation from any fee award.  In making that argument, Defendant refers to 19.9 hours that Plaintiff's counsel billed in connection with a dispute over Plaintiff's request that Defendant provide certain information (including social security numbers) to assist in identifying class members.  (Def. Br. at 27-28, ECF No. 64 (describing ECF Nos. 41-42)).  Defendant raised the parties' disagreement by letter dated November 9, 2018, (ECF No. 41), and Plaintiff responded by letter dated November 16, 2018.  (ECF No. 42).  The Court thereafter conducted a telephone conference and resolved the matter informally.  The Court continues to believe now, as it did in 2018, that the parties should have resolved their dispute through the meet-and-confer process, without the need for letter briefing and Court intervention.  In any event, while the Court did not ultimately direct Defendant to produce the class members' social security numbers, the Court does not believe it would be appropriate to strike the time Plaintiff spent pursuing that

information from a fee award.  In seeking that data, Plaintiff sought to help ensure a smooth completion of the class administration process (e.g., providing another tool to assist the administrator in locating class members who had relocated, etc.).  Plaintiff's request was not frivolous or otherwise inappropriate.  Rather, the Court declined to direct the production of such sensitive information prospectively, before seeing if other, less intrusive means could be successful.  The parties' dispute was intertwined with the class settlement process, and the Court declines to exclude Plaintiff's counsel's corresponding billing entries from the fee award.

The Court next considers Defendant's argument that it should award Plaintiff's counsel Yongmoon Kim only half of his typical rate for time spent traveling.  The Court disagrees.  This case did not involve extensive travel, let alone the sort of long-distance travel that would be conducive to performing other work while in transit (e.g., via plane, train, etc.).  Indeed, Defendant challenges counsel's charges for travel to a single conference – a total of 1.6 hours, round-trip.  (Def. Br. at 33-34, ECF No. 64).  Any time that Plaintiff's counsel spent traveling to and from the courthouse for that Court-mandated conference was time that he could not spend on other activities.  He should be compensated for that time.  The Court declines to impose a reduced "travel rate."

The Court has also examined the rest of Plaintiff's billing entries, including the time that Plaintiff's counsel spent preparing for/engaging in the final fairness hearing and litigating this contested fee application.  Having reviewed those entries, in connection with the parties' submissions and the balance of the record for this matter, the Court finds that they are reasonable.  Likewise, the Court finds that the various costs Plaintiff's counsel seeks to recoup are reasonable.  The Court therefore determines that the loadstar amount in this case is $119,576.85, composed of the following:

| Category: | Hours | Hourly Rate | Total |
|---|---|---|---|
| Jason D'Agnenica | 95.68[4] | $550.00 | $52,624.00 |
| Alan Poliner | .20 | $625.00 | $125.00 |
| Yongmoon Kim (6/16/15 - 9/30/19 | 65.3 | $455.00 | $29,711.50 |
| Yongmoon Kim (10/1/19 – Present) | 43.00 | $495.00 | $21,285.00 |
| Catherine Rhy | 22.80 | $395.00 | $9,006.00 |
| Eva Pitts | 4.40 | $295.00 | $1,298.00 |
| Paralegals | 29.80 | $165.00 | $4,917.00 |
| Costs | | | $610.35 |
| **TOTAL** | | | **$119,576.85** |

Finally, the Court recognizes, as it noted above, that it may deviate from the lodestar in certain "rare circumstances." Souryavong, 872 F.3d at 128. After considering the relevant factors, the Court does not find that such rare circumstances exist here. The Court finds that the lodestar already accounts for the factors necessary to calculate a reasonable fee. The Court therefore finds that $119,576.85 represents a reasonable award of fees and costs in this matter and will direct Defendant to pay that amount pursuant to 15 U.S.C. § 1692k(a)(3).

### III. CONCLUSION

Based on the foregoing, Plaintiff's application for an award of reasonable costs and attorneys' fees, (ECF No. 60), is **GRANTED IN PART**. The Court finds that that $119,576.85

---

[4] This number is derived by taking Mr. D'Agnenica's total billed hours (101.50) and reducing them by the 20% discount applied to the time Mr. D'Agnenica spent on the motion for final approval (5.82 hours).

represents a reasonable award of fees and costs in this matter and will direct Defendant to pay that amount pursuant to 15 U.S.C. § 1692k(a)(3). An appropriate form of Order accompanies this Opinion.


January 21, 2021  　　　　　　　　　　　　　　　　　　**s/ Joseph A. Dickson**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Joseph A. Dickson**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**